**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

DUHON ZENO                                                      CIVIL ACTION

VERSUS                                                             NO. 17-6234

JAMES LEBLANC                                            SECTION: "G"(5)

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.    *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

### Procedural History

Petitioner, Duhon Zeno, is a convicted inmate currently housed at the Lafourche Parish Work Release Facility in Raceland, Louisiana.    In June 2012, he was initially charged in a bill of information with four counts:    (1) possession of a Schedule III controlled dangerous substance, Hydrocodone (La. R.S. 40:968); (2) the sale, possession or distribution of a legend drug (La. R.S. 40:1238.1); (3) possession of a firearm by a convicted felon (La. R.S. 14:95.1); and (4) illegal carrying of a weapon while in possession of a controlled dangerous substance (La. R.S. 14:95 E).    The State subsequently entered a "*nolle prosequi*" as to the

first two counts and amended the bill of information accordingly.[1]    On May 9, 2013, a jury

found him guilty on the two remaining counts.[2]    On July 24, 2013, the trial court denied his

motions for new trial and post-verdict judgment of acquittal.    He was fined $1,000 and

sentenced to serve 15 years imprisonment at hard labor without benefit of parole, probation

or suspension of sentence on count three, and 10 years imprisonment at hard labor without

benefit of parole, probation or suspension of sentence on count four, to run concurrently.[3]

His motion to reconsider the sentence was denied.

On direct appeal, he asserted nine assignments of error:    (1) Louisiana Revised

Statute 14:95.1 is unconstitutional because it fails to meet the requirements of Article I,

Section 11 of the Louisiana Constitution as amended in 2012; (2) the trial court erred in

denying the motion to quash the bill of information based on the unconstitutional statute;

(3) the prosecution for both offenses violates principles of double jeopardy; (4) the verdicts

rendered by an improperly constituted petit jury were legally infirm; (5) the trial court erred

in denying the motion for new trial; (6) the trial court erred in denying the motion for post-

verdict judgment of acquittal; (7) the trial court erred in denying the motion to suppress

evidence; (8) the trial court erred in denying the motion to reconsider sentence; and (9) the

sentences are excessive.    On September 19, 2014, the Louisiana First Circuit Court of

---

[1]  State Rec., Vol. 1 of 4, Bill of Information.    State Rec., Vol. 2 of 4, Minute Entry, 5/7/13.

[2]  State Rec., Vol. 2 of 4, Minute Entry, 5/9/13.

[3]  State Rec., Vol. 2 of 4, Minute Entry, 7/24/13.

Appeal affirmed the convictions, but vacated the sentences because the trial court failed to observe the statutorily mandated 24-hour delay after denying the post-trial motions before imposing sentences.[4]    The case was remanded for resentencing.    On May 22, 2015, the Louisiana Supreme Court denied his application for writ of certiorari.[5]

The trial court on remand suspended the imposition of the mandatory fine, but imposed the same terms of imprisonment.[6]    The trial court denied his motion to reconsider the sentence.    Zeno appealed, assigning as error the trial court's denial of his motion to reconsider and the excessive sentences imposed.    On November 9, 2015, the court of appeal affirmed his sentences.[7]    On December 16, 2016, the Louisiana Supreme Court denied his application for writ of certiorari.[8]

On or about June 27, 2017, Zeno filed his federal application for habeas corpus relief.[9] His application includes four grounds for relief raised in the state courts on direct appeal: (1) Louisiana Revised Statute 14:95.1 is unconstitutional; (2) the evidence was insufficient to support the convictions; (3) the prosecution violated double jeopardy principles; and (4)

---

[4]    *State v. Zeno*, 2014-KA-0325 (La. App. 1 Cir. 9/19/14), 155 So.3d 4; State Rec., Vol. 4 of 4.

[5]    *State v. Zeno*, 2014-K-2167 (La. 5/22/15), 170 So.3d 983; State Rec., Vol. 4 of 4.

[6]    State Rec., Vol. 4 of 4, Resentencing, 1/20/15.

[7]    *State v. Zeno*, 2015-KA-0763, 2015 WL 6951581 (La. App. 1 Cir. 11/9/15); State Rec. Vol. 4 of 4.

[8]    *State v. Zeno*, 2015-K-2233 (La. 12/16/16), 212 So.3d 1175; State Rec., Vol. 4 of 4.

[9]    Rec. Docs. 1, 4, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus.

the petit jury was improperly constituted.      The State concedes that the federal application

is timely and that the claims have been exhausted in the state courts.      The State contends

the claims should be denied on the merits.[10]

### Facts

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts

adduced at trial as follows:

> On March 15, 2012, at approximately 1 p.m., Agent Derrick Champagne, a narcotics agent with the Lafourche Parish Sheriff's Office, along with fellow Agents David Melancon and Corey Brooks, were traveling southbound on Plantation Road in Thibodaux, Louisiana. As they neared the intersection of Plantation Road and Canal Boulevard, they noticed a white vehicle, being driven by the defendant, approach the intersection. The defendant did not bring his vehicle to a complete stop, nor did he activate his turn signal before making a left-hand turn onto Canal Boulevard. After turning onto Canal Boulevard, the agents caught up with the defendant, activated the squad car's emergency lights and sirens, and initiated a traffic stop. At some point before the defendant's vehicle came to a complete stop, Agent Champagne and Agent Melancon observed the defendant's passenger, Stanley Watkins, look back at the agents through the vehicle's rear window, and then turn and throw an unknown object out of the passenger side window.
>
> Once both vehicles were stopped, Agent Melancon made contact with the defendant and advised him of the traffic stop, Agent Champagne approached the passenger, and Agent Brooks began searching for the unknown object. Agent Melancon then asked Watkins to identify the object, but before he could reply, the defendant interrupted, saying, "He doesn't do any drugs, man." The agents instructed both men to exit the defendant's vehicle and moved them towards the rear of the vehicle on the passenger side. Agent Champagne asked the defendant for consent to search the vehicle. The defendant verbally consented to the search and his consent was given freely and voluntarily, and without fear, duress, or intimidation. Agent Melancon heard the defendant grant consent. Agent Champagne opened the front passenger door and entered the passenger compartment of the vehicle where he observed a brown shaving kit bag partially underneath the driver's seat. When Agent Champagne

---

[10]  Rec. Doc. 10.

asked the defendant what was in the bag, the defendant approached the car, sat in the driver's seat, and told Agent Champagne, "[m]y gun is in here from my house." Agent Champagne noted that the defendant was not surprised when the gun was discovered. The defendant was instructed to put down the bag, and Agent Champagne escorted the defendant out of the vehicle.

Once the defendant was clear of the area, Agent Champagne opened the bag and identified a .45 caliber handgun loaded with eight rounds. Additionally, a prescription pill bottle containing pills was found inside the bag. The seized items were taken to the Criminal Operations Center where the evidence was processed and stored by the evidence custodian.

Katie Troxler, a forensic scientist with the Louisiana State Police Crime Lab, was accepted as an expert in the field of chemical analysis at trial. On April 5, 2012, Troxler received a white plastic bottle containing the pills seized by Agent Champagne during the defendant's traffic stop. During the first examination, Troxler, using a pharmaceutical database entry, verified the pills, which included Naproxen Sodium 220 mg (Aleve), Pantoprazole Sodium 40 (a gastrointestinal medication), and pills containing both 500 milligrams of Acetaminophen and 5 milligrams of Hydrocodone Bitartrate. Twelve months later, on April 5, 2013, only the pills previously identified as containing Hydrocodone were resubmitted, and Troxler performed a chemical analysis, whereby she again confirmed the pills contained Hydrocodone, a controlled dangerous substance.

Luke Adams, an officer with the Department of Probation and Parole, testified at trial. He testified that on November 6, 2006, the defendant was convicted of possession of Hydrocodone and sentenced to five years at hard labor, but his sentence was suspended and the defendant was placed on three years supervised probation. Officer Adams was the defendant's probation supervisor, and testified that during the three-year period, the defendant's probation was never revoked. The probationary period was completed on November 6, 2009 as scheduled.

Greta Hood, a friend of the defendant, testified at trial. She indicated that on March 15, 2012, the defendant was assisting her gathering and packing her belongings as she was moving from her apartment in Thibodaux. Hood testified the gun in question, a Colt .45, belonged to her. She testified that a friend gave her the gun for protection and that she kept it on the top shelf of her closet. Hood testified that because her grandchildren were coming over, and because she did not want the gun out while they were there, she placed the gun inside the defendant's shaving kit bag, which was located in her

bathroom. Thereafter, Hood claimed she walked out of the house holding the bag and placed it under the driver's seat in the defendant's vehicle. Hood testified she did not tell the defendant she placed the gun in his car. Hood stated the defendant left the apartment before she did, and the next time she saw him was when he was stopped by the police officers.[11]

### Standards of Review on the Merits

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both.    A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."    28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").    With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have

---

[11] *Zeno*, 155 So.3d at 8-10.

independent meaning."    *Bell v. Cone*, 535 U.S. 685, 694 (2002).    A state-court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent.    *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010).    An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case."    *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694.    A state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief.    *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").    "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA.    *Harrington v. Richter*, 562 U.S. 86, 102 (2011).    Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents."    *Harrington*, 562 U.S. at 102

(emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

## Analysis

### A. *Facial Challenge - Louisiana Revised Statute 14:95.1*

Zeno presented two related claims on direct appeal involving the constitutionality of Louisiana Revised Statute 14:95.1.    He argued the criminal statute was unconstitutional because it fails to meet the requirements of amended Article I, Section 11 of the Louisiana Constitution ("The right of each citizen to keep and bear arms is fundamental and shall not be infringed. Any restriction on this right shall be subject to strict scrutiny.").    La. Const. art. I, § 11 (Amended by Acts 2012, No. 874, § 1).    Specifically, he asserted the statute cannot pass strict scrutiny because it is not narrowly tailored to achieve a compelling government interest.    He also argued the district court erred in denying his motion to quash the bill of information on grounds that the provision was unconstitutional.

The court of appeal rejected both claims, reasoning as follows:

Louisiana Revised Statutes 14:95.1, provides, in pertinent part:

A.    It is unlawful for any person who has been convicted of a crime of violence as defined in R.S. 14:2(B) which is a felony or simple burglary, burglary of a pharmacy, burglary of an inhabited dwelling, unauthorized entry of an inhabited dwelling, felony illegal use of weapons or dangerous instrumentalities, manufacture or possession of a delayed action incendiary device, manufacture or possession of a bomb, or possession of a firearm while in the possession of or during the sale or distribution of a controlled dangerous substance, or any violation of the Uniform Controlled Dangerous Substances Law which is a felony, or any crime which is defined as a sex offense in R.S. 15:541,

or any crime defined as an attempt to commit one of the above-enumerated offenses under the laws of this state, or who has been convicted under the laws of any other state or of the United States or of any foreign government or country of a crime which, if committed in this state, would be one of the above-enumerated crimes, to possess a firearm or carry a concealed weapon.

\* \* \*

C.     The provisions of this Section prohibiting the possession of firearms and carrying concealed weapons by persons who have been convicted of certain felonies shall not apply to any person who has not been convicted of any felony for a period of ten years from the date of completion of sentence, probation, parole, or suspension of sentence.

D.     For the purposes of this Section, "firearm" means any pistol, revolver, rifle, shotgun, machine gun, submachine gun, black powder weapon, or assault rifle which is designed to fire or is capable of firing fixed cartridge ammunition or from which a shot or projectile is discharged by an explosive.

The Second Amendment to the United States Constitution and Article I, Section 11 of the Louisiana Constitution prohibit the infringement of the right to keep and bear arms. In *District of Columbia v. Heller*, 554 U.S. 570, 635, 128 S.Ct. 2783, 2821–22, 171 L.Ed.2d 637 (2008), the U.S. Supreme Court held that the Second Amendment protects the right to keep and bear arms for the purpose of self-defense and struck down a District of Columbia law that banned the possession of handguns in the home. As noted by the U.S. Supreme Court in *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 130 S.Ct. 3020, 3042, 177 L.Ed.2d 894 (2010), a clear majority of the States in 1868 recognized the right to keep and bear arms as being among the foundational rights necessary to our system of government, and the framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty. Accordingly, the right to bear arms was always fundamental. *State v. Draughter*, 2013–0914 (La. 12/10/13), 130 So.3d 855, 863; *Eberhardt*, 145 So.3d at 383–84.

It was the slim majority supporting the holdings in *Heller* and *McDonald* which prompted Louisiana legislators to enact 2012 La. Acts, No. 874, § 1 to amend Article I, Section 11 of the Louisiana Constitution, which, as a result, specifically states that the right of each citizen to keep and bear arms is "fundamental and shall not be infringed." The amended version of Section 11

further states that "[a]ny restriction of this right shall be subject to strict scrutiny."[12] The legislators' stated intention in introducing this legislation was to secure a continued individual right to bear arms by Louisiana citizens under the Louisiana Constitution, protected from possible future judicial or legislative erosion. *Draugther*, 130 So.3d at 861; *Eberhardt*, 145 So.3d at 383, n. 3. The 2012 amendment to Article I, Section 11 merely sought to ensure that the review standard of an alleged infringement of this fundamental right was in keeping with the refinements made to the constitutional analysis developed since *State v. Amos*, 343 So.2d 166 (La. 1977). The amendment, however, did not effect a change in the nature of the right by adding the term "fundamental" to describe the right to keep and bear arms. *State v. Webb*, 2013–1681 (La. 5/7/14), 144 So.3d 971, 977 n. 3; *Eberhardt*, 145 So.3d at 383–84. Conversely; the Louisiana Supreme Court has also held that "[t]he right to keep and bear arms, like other rights guaranteed by our state constitution, is not absolute." *State in Interest of J.M.*, 2013–1717 (La. 1/28/14), 144 So.3d 853, 859–60; *Eberhardt*, 145 So.3d at 383.

In the two years since Article I, Section 11 was amended, the Louisiana Supreme Court has, on a case-by-case basis, applied the amended language to Louisiana's various gun laws. In its first case subsequent to the 2012 amendment, the Court held that, when applied to a convicted felon still under State supervision through probation or parole, La. R.S. 14:95.1 does not unconstitutionally infringe upon the right to bear arms secured by the amended Article I, Section 11. *Draughter*, 130 So.3d at 868. Further, the Court has upheld the constitutionality of La. R.S. 14:95(A)(1) (making illegal the carrying of an intentionally concealed firearm on one's person) and La. R.S. 14:95.8 (making unlawful the possession of a handgun by a person under the age of seventeen except in certain enumerated circumstances). *State in the Interest of J.M.*, 144 So.3d at 866. Recently, the Supreme Court upheld the constitutionality of La. R.S. 14:95(E), which makes illegal the possession of a firearm while in possession of or during the sale or distribution of a controlled dangerous substance.[13] *Webb*, 144 So.3d at 975.

Most recently, in *Eberhardt*, the Louisiana Supreme Court directly addressed

---

[12] Prior to the 2012 amendment, Article I, Section 11 of the Louisiana Constitution stated: "The right of each citizen to keep and bear arms shall not be abridged, but this provision shall not prevent the passage of laws to prohibit the carrying of weapons concealed on the person."

[13] We note that the instant defendant was also charged with a violation of La. R.S. 14:95(E), but did not challenge its constitutionality on appeal.

whether or not La. R.S. 14:95.1 was rendered unconstitutional by the amendment of Article I, Section 11 of the Louisiana Constitution. In *Eberhardt*, the defendant was charged with one count of possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1, having been previously convicted of unauthorized entry of an inhabited dwelling. The defendant filed a motion to quash the indictment, but the motion was denied by the trial court. Noting the above principles, the Louisiana Supreme Court, quoting its holding in *State in the Interest of J.M.*, 144 So.3d at 860, stated that "the voter's ratification of strict scrutiny as a standard of review to be applied to alleged infringements on the right to keep and bear arms was not meant to invalidate every restriction on firearms," but rather, the strict scrutiny standard was "designed to provide a framework for carefully examining the importance and sincerity of the reasons advanced by the governmental decisionmaker." After reviewing the Senate hearings,[14] the Court concluded that the amendment to Article I, Section 11 was not intended to invalidate existing weapons laws. *Eberhardt*, 145 So.3d at 383–85.

After affirming the Court's earlier ruling in *Amos*, and evaluating the strict scrutiny standard, the Court concluded:

> We conclude that La. R.S, 14:95.1 serves a compelling governmental interest that has long been jurisprudentially recognized and is grounded in the legislature's intent to protect the safety of the general public from felons convicted of specified serious crimes, who have demonstrated a dangerous disregard for the law and the safety of others and who present a potential threat of further or future criminal activity. *See State v. Amos*, 343 So.2d at 168. Further, the law is narrowly tailored in its application to the possession of firearms or the carrying

---

[14] On April 9, 2012, the constitutional amendment was debated in the Louisiana Senate. During the debate, Senator Dan Claitor asked Senator Neil Riser, the amendment's sponsor, to explain the amendment. Senator Riser stated that the purpose of the act was to reinforce the Second Amendment in Louisiana law, so that Louisiana would have the strongest Second Amendment law in the nation. Regarding the existing gun laws, Senator Riser further stated, "You need to be real clear that [this act] defines ... how laws are judged. So [we] roughly have close to forty gun laws right now and those laws will stay in effect." Senator Riser further stated, "Any [weapon] law on the books right now is on the books [and] they are going to stay there.... You'll have to follow the current statute[s]." Louisiana 2012 Reg. Session Senate Floor Debate, Committee Debate on Bill 303, http://senate.la.gov/sessioninfo/Archives/2012/rs.htm at 1:57 to 2:21; *see also*, *Eberhardt*, 145 So.3d at 384, n. 4; *State v. Wiggins*, 2013–0649 (La. App. 1st Cir. 1/31/14), 139 So.3d 1, n. 5.

> of concealed weapons for a period of only ten years from the date of completion of sentence, probation, parole, or suspension of sentence, and to only those convicted of the enumerated felonies determined by the legislature to be offenses having the actual or potential danger of harm to other members of the general public. Under these circumstances, we find "a long history, a substantial consensus, and simply common sense" to be sufficient evidence for even a strict scrutiny review. [Citations omitted.]

*Eberhardt*, 145 So.3d at 385.

> Because the 2012 amendment to Article I, Section 11 does not invalidate La. R.S. 14:95.1 as it applies to a felon no longer under State custody, the trial court did not abuse its discretion in denying the motion to quash the bill of information. Accordingly, these assignments of error are without merit.[15]

The Louisiana Supreme Court denied relief without assigning additional reasons.

Zeno contends the state court of appeal decision was contrary to or an unreasonable application of *Heller* and *McDonald*.    However, as the quoted portion reflects, the Louisiana First Circuit's decision did not rely on this Supreme Court precedent.    Rather, the precedent served only as background to explain what prompted the Louisiana Legislature to amend the state constitution in an attempt to reinforce the Second Amendment.    The court of appeal went on to analyze the narrow state-law issue presented, that is, the constitutionality of Louisiana Revised Statute 14:95.1 after passage of the state constitutional amendment, and the applicable Louisiana jurisprudence on the issue.    The appellate court concluded that, based upon relevant Louisiana Supreme Court precedent, specifically *State v. Eberhardt*, 145 So.3d 377 (La. 2014), the 2012 amendment to the state's

---

[15]  *Zeno*, 155 So.3d at 12-14 (footnotes in original).

constitution did not invalidate Louisiana Revised Statute 14:95.1.[16]    Thus, to the extent Zeno is challenging the propriety of the state court's decision under state law, the claim is not cognizable on federal habeas review.    A federal habeas court's review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."    28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).    A federal court may not grant habeas relief based on an alleged error in the interpretation or application of state law.    *Estelle v. McGuire*, 502 U.S. at 68; *see also Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (a federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law") (citation and quotation omitted); *Swarthout v. Cooke*, 562 U.S. 216, 218 (2011) (federal habeas review does not lie for errors of state law).

Further, neither of the Supreme Court cases cited by Zeno supplies any "clearly established Federal law" on the prohibition against possession of firearms by convicted felons.    In analyzing a Second Amendment issue, the United States Fifth Circuit Court of Appeals had occasion to discuss *Heller* and *McDonald*:

> The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

> The Supreme Court has explored the meaning of the Second Amendment in depth. *See District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783, 171

---

[16] Once Zeno raised the constitutionality issue on direct appeal, the State contacted the Attorney General's Office.    However, the Attorney General's Office determined it was unnecessary to file a brief on the issue, which would ultimately be resolved by the Louisiana Supreme Court's decision in the pending *Eberhardt* case.    *See* State Rec., Vol. 2 of 4, Appellee Brief, p. 7 n. 1.

L.Ed.2d 637 (2008). In *Heller*, the plaintiff challenged a D.C. law that almost totally banned private handgun ownership. *Id.* at 574, 128 S.Ct. 2783. In striking down the law, the Court held that the Second Amendment codified a pre-existing individual right to keep and bear arms. *Id.* at 592, 128 S.Ct. 2783. Important to our analysis is the Supreme Court's explanation of why the Second Amendment guarantees such an individual right.

The Court held that the first clause of the Second Amendment, which deals with the militia, is prefatory and not a limitation on the amendment itself. The second clause is the "operative" one. *Id.* at 577, 128 S.Ct. 2783. While the Second Amendment was no doubt concerned with the effectiveness of militias, "[t]he prefatory clause does not suggest that preserving the militia was the only reason" for the Second Amendment. *Id.* at 599, 128 S.Ct. 2783. Instead, its main purpose was to "guarantee the individual right to possess and carry weapons in case of confrontation," which *Heller* later clarified to mean "an individual right to bear arms for defensive purposes." *Id.* at 592, 602, 128 S.Ct. 2783. Indeed, in a subsequent case, the Court confirmed that "self-defense is the *central component*" of the Second Amendment. *McDonald*, 561 U.S. at 767, 130 S.Ct. 3020. *Heller* went on to hold that because the Second Amendment is about the defense of "hearth and home," and because "the American people have considered the handgun to be the quintessential self-defense weapon [,] ... a complete prohibition of their use" is invalid. 554 U.S. at 635, 629, 128 S.Ct. 2783. Heller's reach goes beyond handguns, though, because "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id.* at 582, 128 S.Ct. 2783.

**While *Heller* recognized the right of individual Americans to keep and bear arms, it also recognized that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Id.* at 626, 128 S.Ct. 2783. The Court then gave a non-exhaustive list of "longstanding prohibitions on the possession of firearms" that are "presumptively lawful" and pass muster under *Heller*:**

> **[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.**

*Id.* at 626–27 & n. 26, 128 S.Ct. 2783.

*Hollis v. Lynch*, 827 F.3d 436, 443-44 (5th Cir. 2016) (emphasis added).    The holding in *Heller* was narrow and addressed only the "core" right of "law-abiding, responsible citizens to use arms in defense of hearth and home."    *Heller*, 554 U.S. at 634-35.    Indeed, the Supreme Court carefully delineated the scope of the opinion in order to avoid casting doubt on the "longstanding prohibitions on the possession of firearms by felons."    *Id.* at 626-27. The Supreme Court even reaffirmed this statement in *McDonald*:

> We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as "prohibitions on the possession of firearms by felons and the mentally ill," "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.*, at –––– ––––, 128 S.Ct., at 2816–2817. We repeat those assurances here. Despite municipal respondents' doomsday proclamations, incorporation does not imperil every law regulating firearms.

*McDonald*, 561 U.S. at 786.

   To the extent Zeno implies the state courts should have extended the established holdings to a new context, namely prohibitions on felons possessing handguns, the Supreme Court's rulings clearly state otherwise.    Neither Supreme Court case cited by Zeno supplies clearly established federal law on state regulations that restrict convicted felons from possessing firearms.    Thus, the state appellate court's decision in this case could not be contrary to or an unreasonable application of clearly established federal law, as determined by the United States Supreme Court.    *Kernan v. Cuero*, 583 U.S. —, 138 S.Ct. 4, 9, 199 L.Ed.2d 236 (2017) (citing *Woods v. Donald*, 575 U.S. —, 135 S.Ct. 1372, 1377, 191 L.Ed.2d 464 (2015) (*per curiam* ) (quoting *Lopez v. Smith*, 574 U.S. —, 135 S.Ct. 1, 3–4, 190 L.Ed.2d 1 (2014) (*per*

*curiam* )); *White v. Woodall*, 134 S. Ct. at 1706.

B. *Sufficiency of the Evidence*

Zeno claims that the evidence was insufficient to support his convictions. Specifically, he argues the evidence did not prove possession of the firearm due to his alleged lack of knowledge that the gun was in the vehicle.    He points to the fact that he freely consented to the search of the vehicle, and his friend testified she owned the gun and placed it in Zeno's bag without his knowledge.    In denying this claim on direct appeal, the Louisiana First Circuit Court of Appeal reasoned:

> In his fifth assignment of error, the defendant argues the trial court erred in denying his motion for new trial. In his sixth assignment of error, the defendant argues the trial court erred in denying his motion for post-verdict judgment of acquittal. Specifically, the defendant contends that Hood's testimony regarding her actions with the firearm, his consent to search his vehicle, and the fact that he did not attempt to conceal the weapon, demonstrate his lack of knowledge regarding the presence of the firearm. As such, he avers these motions should have been granted.

> The standard of review for sufficiency of the evidence to support a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime, and the defendant's identity as the perpetrator of that crime, beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *State v. Patton*, 2010–1841 (La. App. 1st Cir. 6/10/11), 68 So.3d 1209, 1224. In conducting this review, we must also be expressly mindful of Louisiana's circumstantial evidence test, i.e., "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. R.S. 15:438; *State v. Millien*, 2002–1006 (La. App. 1st Cir. 2/14/03), 845 So.2d 506, 508–09.

> When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing

16

that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. *State v. Wright*, 98–0601 (La. App. 1st Cir. 2/19/99), 730 So.2d 485, 487, *writs denied*, 99–0802 (La. 10/29/99), 748 So.2d 1157 and 2000–0895 (La. 11/17/00), 773 So.2d 732.

To prove a violation of La. R.S. 14:95.1, the State must prove: (1) the defendant's status as a convicted felon; and (2) that the defendant was in possession of a firearm. *State v. Loper*, 2010–0582 (La. App. 1st Cir. 10/29/10), 48 So.3d 1263, 1266. The State must also prove that ten years have not elapsed since the date of completion of the punishment for the prior felony conviction. *See* La. R.S. 14:95.1(C). Thus, a violation of La. R.S. 14:95.1 by the defendant required no more than that he had a prior felony conviction and was in possession of a firearm.

In pertinent part, La. R.S. 14:95(E) prohibits the carrying of weapons if the offender uses, possesses, or has under his immediate control any firearm, or other instrumentality customarily used or intended for probable use as a dangerous weapon, while in the possession of or during the sale or distribution of a controlled dangerous substance. The term "possess" is broad enough to encompass both actual and constructive possession under La. R.S. 14:95(E). Constructive possession occurs when the firearm is subject to the defendant's dominion and control, even temporarily. Constructive possession contains an element of awareness or knowledge that the firearm is there and general intent to possess it. General intent exists when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed consequences as reasonably certain to result from his act or failure to act. La. R.S. 14:10. Although the existence of intent is a question of fact, it may be inferred from the circumstances of the transaction. *See State v. Johnson*, 2003–1228 (La. 4/14/04), 870 So.2d 995, 998–999.

A thorough review of the record indicates that any rational trier of fact, viewing the evidence presented in this case in the light most favorable to the State, could find that the evidence proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of a felon in possession of a firearm, illegal carrying of a weapon while in possession of a controlled dangerous substance, and the defendant's identity as the perpetrator of the crimes. When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defendant, that hypothesis falls, and the defendant is guilty unless there is

another hypothesis which raises a reasonable doubt. *State v. Moten*, 510 So.2d 55, 61 (La. App. 1st Cir. 1987), *writ denied*, 514 So.2d 126 (La. 1987). No such alternative hypothesis exists in the instant case. This Court will not assess the credibility of witnesses or reweigh the evidence to overturn a factfinder's determination of guilt. Furthermore, the trier of fact may accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is on the weight of the evidence, not its sufficiency. *State v. Lofton*, 96–1429 (La. App. 1st Cir. 3/27/97), 691 So.2d 1365, 1368, *writ denied*, 97–1124 (La. 10/17/97), 701 So.2d 1331. Thus, the fact that the record contains evidence that conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. *State v. Azema*, 633 So.2d 723, 727 (La. App. 1st Cir. 1993), *writ denied*, 94–0141 (La. 4/29/94), 637 So.2d 460.

After reviewing the evidence, we cannot say that the jury's determination was irrational under the facts and circumstances presented to them. *See State v. Ordodi*, 2006–0207 (La. 11/29/06), 946 So.2d 654, 662. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the factfinder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected, by the jury. *State v. Calloway*, 2007–2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam). Therefore, the trial court in the instant case did not abuse its discretion in denying the defendant's motion for new trial and motion for post-verdict judgment of acquittal.

These assignments of error are without merit.

The Louisiana Supreme Court also denied relief without assigning additional reasons.

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Taylor v. Day*, Civ. Action No. 98–3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), *aff'd*, 213 F.3d 639 (5th Cir. 2000). For the following reasons, the Court finds

that Zeno has made no such showing.

Under *Jackson v. Virginia*, 443 U.S. 307 (1979), a federal *habeas* court addressing an insufficiency of the evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011); *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008). Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law. *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U.S. at 324 n. 16). The court's consideration of the sufficiency of the evidence extends only to what was presented at trial. *See McDaniel v. Brown*, 558 U.S. 120, 131, 130 S.Ct. 665, 672 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (*Jackson* standard relies "upon the record evidence adduced at the trial") (quoting *Jackson*, 443 U.S. at 324).

Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). Thus, all credibility choices and conflicting inferences must be resolved in favor of the

verdict.    *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

A federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder.    *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir.1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir.1985). In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.' "    *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U .S. 390, 402 (1993) (emphasis added)).    Moreover, because the state court's decision applying the already deferential *Jackson* standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential."    *Parker v. Matthews*, 132 S.Ct. 2148, 2152 (2012); *see also Coleman v. Johnson*, 132 S.Ct. 2060, 2062 (2012).

Zeno disputes the evidence regarding his possession of a firearm.    He claims the state court unreasonably applied *Jackson* because the State did not prove he had knowledge of the weapon or any intent to possess it.    Essentially he argues the jury should have credited Greta Hood's testimony that she put the gun in his shaving kit without his knowledge [17] and rejected the testimony by Detective Champagne regarding Zeno's statement to the contrary that evidenced he was aware of the gun. [18]    Plainly, Zeno's convictions were supported by the evidence presented at trial.    The jury accepted the

---

[17]  State Rec., Vol. 3 of 4, Trial Transcript, pp. 379-87.

[18]  *Id*. at 275-77.

testimony of Detective Champagne as to the statement Zeno himself made about the gun being in the vehicle.    Credibility determinations are the province of the jurors, and they obviously found the officer more credible than Zeno's friend.    A federal habeas court generally will not grant relief on a sufficiency claim grounded on such matters of credibility. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995) ("[U]nder *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review."); *Ramirez v. Dretke*, 398 F.3d at 695 ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); *McCowin v. Scott*, No. 93-5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994); *Phillips v. Cain*, Civ. Action No. 11-2725, 2012 WL 2564926, at *14 (E.D. La. Apr. 11, 2012), *adopted*, 2012 WL 2565025 (E.D. La. July 2, 2012); *Picou v. Cain*, Civ. Action No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).    Contrary to Zeno's assertion, the evidence reasonably established that he knowingly possessed the gun.

When the evidence in this case is viewed in the light most favorable to the prosecution, it simply cannot be said that the guilty verdicts were irrational.    Therefore, Zeno cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.    Accordingly, under the doubly-deferential standards of review that must be applied by this federal habeas court, relief is not warranted.

C. *Double Jeopardy*

Zeno claims that "the Louisiana court of appeals infringed the *Blockburger* test

negating the same element analysis."[19]    His federal application, however, advances no

factual grounds or argument in support of the claim.    On direct appeal, he argued that his

convictions for both illegal carrying of a weapon while possessing hydrocodone and

possession of a firearm by a convicted felon violate the constitutional prohibition against

double jeopardy.    The Louisiana First Circuit recognized two double jeopardy tests, the

*Blockburger* test and the "same evidence" test.    Following Louisiana law, the court of appeal

applied the same-evidence test in denying the claim and concluded that "the evidence

required to prove a violation of La. R.S. 14:95.1 would not also establish a violation of La. R.S.

14:95.1 (or *vice versa*)."[20]    The court of appeal also noted:

> The defendant does not claim a violation of the prohibition against double
> jeopardy under the "additional fact" test. Because La. R.S. 14:95.1 requires
> proof of an additional fact not relevant to La. R.S. 14:95(E), i.e., the defendant's
> status as a felon, prosecution in this case was plainly permissible under the
> "additional fact" test, in which the prosecution of a defendant for violations of
> multiple statutes arising out of the same operative facts or conduct is
> permissible provided each statutory violation requires proof of an additional
> fact. *Sandifer*, 679 So.2d at 1329.[21]

The Double Jeopardy Clause of the Fifth Amendment protects against:    (1) a second

prosecution for the same offense after acquittal, (2) a second prosecution for the same

offense after conviction, and (3) multiple punishments for the same offense.    *Brown v. Ohio*,

432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) (quoting *North Carolina v. Pearce*,

---

[19]    Rec. Doc. 1 at 14.

[20]    *Zeno*, 155 So.3d at 16.

[21]    *Id.* at 15 n. 6.

395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969)).    In *Blockburger*, the United

States Supreme Court determined that if each charged offense contains an element that is

not contained in the other, the charges are not considered to be the same offense and are not

barred under the Double Jeopardy Clause.    *Blockburger v. United States*, 284 U.S. 299, 304,

52 S.Ct. 180, 182, 76 L.Ed. 306 (1932).    In applying the test, the Court must "compare the

criminal statutes at issue and inquire whether each provision requires proof of an additional

fact that the other does not."    *United States v. Singleton*, 16 F.3d 1419, 1442 (5th Cir. 1994)

(citing *Blockburger*, 284 U.S. at 304); *accord Bias v. Ieyoub*, 36 F.3d 479, 480 (5th Cir. 1994).

For the following reasons, the state court's decision was neither "contrary to" nor an

"unreasonable application" of clearly established federal law as determined by the Supreme

Court of the United States.    *Carlile v. Cockrell*, 51 F. App'x 483, 2002 WL 31319380, at *1

(5th Cir. 2002).

The crimes at issue required distinct elements of proof for conviction.    In order to

obtain a conviction for possession of a firearm while possessing hydrocodone (Louisiana

Revised Statute 14:95 (E)), the State must prove that the defendant possessed hydrocodone

and that he simultaneously possessed a firearm.    In order to obtain a conviction for being

a convicted felon in possession of a firearm (Louisiana Revised Statute 14:95.1), the State

must prove that the defendant has previously been convicted of a crime of violence and that

he possessed a firearm.    The elements of the two offenses are not the same; "each requires

proof of an additional fact which the other does not."    *See Blockburger*, 284 U.S. at 304.    As

the state court of appeal concluded, Zeno's convictions for possession of a firearm by a

convicted felon and possession of a firearm while possessing hydrocodone do not violate the Double Jeopardy Clause.   *See e.g.*, *Ford v. Cain*, Civ. Action No. 04-0050, 2004 WL 2998560, at \*7 (E.D. La. Dec. 27, 2004).   Zeno has not established that the prosecution on these two charges violated the prohibition against double jeopardy or that the state court's denial of relief on this claim was contrary to, or an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.   He is not entitled to relief on this claim.

### D.  *Impartial Jury*

Zeno's final claim concerns the post-trial discovery that a juror with prior felony convictions served on the jury.   The juror did not disclose the prior felony convictions on the jury questionnaire or when the trial court posed the qualifications question generally to prospective jurors as a panel during voir dire.[22]   On direct appeal, Zeno argued that the trial court erred in denying his motion for new trial based on the unqualified juror.   Applying state law, the Louisiana First Circuit Court of Appeal denied the claim because Zeno failed to show that he was prejudiced.   La. Code Crim. P. art. 851(4).   The court reasoned that only 10 of 12 jurors needed to concur for a guilty verdict and in this case the verdict was unanimous.[23]   The Louisiana Supreme Court likewise denied relief without assigning

---

[22]  *See* State Rec., Vol. 1 of 4, Motion for New Trial (Defense Counsel Affidavit, Jury Questionnaire, 16th J.D.C. minute entries from prior convictions); *see also State Rec.*, Vol. 3 of 4, Trial Transcript (Voir Dire), p.198.

[23]  The court of appeal noted that while the minutes reflect an 11-1 vote on each count (State Rec., Vol. 1 of 4, Minute Entry, 5/9/13), the jury was polled and reflected a unanimous vote on each count. (State Rec., Vol. 3 of 4, Trial Transcript, pp. 456-59).   *State v. Zeno*, 155 So.3d at 8 n. 1.   The court of appeal observed that the transcript prevails in such a situation.

additional reasons.

To the extent Zeno claims that the trial court erroneously denied him a new trial in violation of state law based on the presence of the unqualified juror, the claim is not cognizable on federal habeas review.    Federal habeas relief is available only to correct violations of the federal constitution. 28 U.S.C. § 2254(a). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions." *Estelle v. McGuire*, 502 U.S. at 67–68.    On habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68.    A denial of a motion for new trial does not violate an independent, cognizable federal constitutional right. *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991) (petitioner's claim that the state courts violated state law in denying his motion for new trial provided no basis for federal habeas relief absent the showing of an independent violation of a federal constitutional right).

To the extent he claims he was denied a fair trial by an impartial jury due to an unqualified juror, that contention does not warrant federal habeas relief.    Under Louisiana law, a person who has a prior felony conviction is not qualified to be a juror.    La. Code Crim. P. art. 401(A)(5).    The Sixth and Fourteenth Amendments guarantee a criminal defendant the right to an impartial and unbiased jury.    *See Morgan v. Illinois*, 504 U.S. 719, 727, 112

---

In reviewing the pleadings and transcript associated with the new trial motion, however, the Court notes that both sides appear to concede that the verdicts were 11-1 on each count and that the juror at issue was the sole "not-guilty" vote.    State Rec., Vol. 1 of 4, Motion for New Trial and Opposition; *see also* State Rec., Vol. 4 of 4, Sentencing Transcript, pp. 7-10.

S.Ct. 2222, 119 L.Ed.2d 492 (1992).    However, there is no federal constitutional guarantee to a felon-free jury.    *Green v. Clark*, Civ. Action No. 13-523, 2014 WL 11511669, at 4 (E.D. Va. Oct. 29, 2014), *report and recommendation adopted*, 2014 WL 11512354 (E.D. Va. Dec. 15, 2014) (citing *Hanna v. Ishee*, 694 F.3d 596, 616 (6th Cir. 2012) ("[T]he Sixth Amendment 'does not require an absolute bar on felon jurors,' because a juror's felon status is not necessarily indicative of a bias against the defendant (or, for that matter, against the prosecution)") (citation omitted); *United States v. Boney*, 977 F.2d 624, 633 (D.C. Cir. 1992) (holding that because convicted felons are not necessarily biased, a verdict is not invalidated simply because a convicted felon was on the jury)).    Indeed, Zeno cites no case law of the United States Supreme Court clearly establishing that having a juror who has been convicted of a felony automatically deprives a defendant of an impartial jury and renders the trial fundamentally unfair.

The Fifth Circuit Court of Appeals has explained that under federal law, "once the trial is complete, a felon's serving as a juror is not an automatic basis for a new trial.    The defendant must demonstrate that the juror was actually biased or fundamentally incompetent."    *United States v. Bishop*, 264 F.3d 535, 555 (5th Cir. 2001) (citing *Soto-Silva*, 129 F.3d at 343; *United States v. Scott*, 854 F.2d 697, 698-99 (5th Cir. 1988); *United States v. Gates*, 557 F.2d 1086, 1088 (5th Cir. 1977) (quoting *Ford v. United States*, 201 F.2d 300, 301 (5th Cir. 1953);*Coughlin v. Tailhook Ass'n*, 112 F.3d 1052, 1058-59 (9th Cir. 1997); *United States v. Langford*, 990 F.2d 65, 68-70 (2d Cir. 1993); *United States v. Humphreys*, 982 F.2d 254, 261 (8th Cir. 1992); *United States v. Boney*, 977 F.2d 624, 633-35 (D.C.Cir.1992)).    In

rejecting claims similar to Zeno's, federal district courts have recognized, "a juror disqualification 'defect is not fundamental as affecting the substantial rights of the accused and the verdict is not void for want of power to render it.' " *Hogue v. Scott*, 874 F.Supp. 1486, 1529 (N.D. Tex. 1994), *aff'd*, 131 F.3d 466 (5th Cir. 1997), *cert. denied*, 523 U.S. 1014, 118 S.Ct. 1297, 140 L.Ed.2d 334 (1998) (quoting *Kohl v. Lehlback*, 160 U.S. 293, 302, 16 S.Ct. 304, 307, 40 L.Ed. 432 (1895)); *see also Barrera v. Thaler*, Civ. Action No. 3-09-CV-1130, 2011 WL 1576094, at *5 (N.D. Tex. Jan. 11, 2011) (Oklahoma resident not qualified to serve under state law on Texas jury did not render trial fundamentally unfair); *Green v. Clark*, 2014 WL 11511669, at *3-4 (E.D. Va. Oct. 29, 2014) (state trial court did not deny petitioner his Sixth Amendment right to an impartial jury when a juror failed to disclose that he was a convicted felon but no bias was shown), *report and recommendation adopted*, 2014 WL 11512354 (E.D. Va. Dec. 15, 2014).

Here, Zeno alleges only that the mere presence of a convicted felon on his jury violated his federal constitutional rights.[24]    However, the proper focus is whether the juror at issue was partial and biased, which is not established simply by the fact that the juror was statutorily unqualified under state law due to a prior felony conviction.    Zeno has offered nothing to indicate that this particular juror was biased against him or unable to render a verdict impartially.    Nothing in the record supports his allegation that the jury was tainted by the presence of the juror at issue.    Consequently, this claim should be denied.

---

[24]    Zeno has never suggested that the juror at issue purposely withheld information about prior felony convictions.    *See McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548 (1984); *Riggins v. Butler*, 705 F.Supp. 1205, 1210-11 (E.D. La. 1989).

**RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Zeno's application for federal habeas corpus relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[25]

New Orleans, Louisiana, this ___31st___ day of _____January_____, 2018

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[25] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.